UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHASSAN MOHAMMAD and SADIQ MOHAMMAD,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC., EXPERIAN INFORMATION SYSTEMS, INC., and DOES 1–100,<br><br>Defendants. | No. 2:18-cv-00405-KJM-DB<br><br>ORDER |

Defendant T-Mobile USA, Inc. ("T-Mobile") moves to compel arbitration and stay all further proceedings. *See generally* Mot., ECF No. 9. Plaintiffs Ghassan Mohammad ("Ghassan") and Sadiq Mohammad ("Sadiq") oppose the motion, ECF No. 14, and defendant has replied, ECF No. 17. For the following reasons, the court GRANTS defendant's motion.

I. BACKGROUND

　　A. Plaintiffs' Claims and Procedural Background

Defendant T-Mobile is a provider of wireless cellular telephone service. Plaintiffs Ghassan Mohammad and Sadiq Mohammad are T-Mobile customers. In their complaint, plaintiffs allege T-Mobile conveyed plaintiffs' personal identifying information to defendant Experian Information Solutions, Inc. ("Experian"), a corporation which compiles consumer credit and personal information for the purpose of providing consumer reports to third parties. Compl.

1

¶ 13, ECF No. 1-1.  Plaintiffs claim Experian allowed hackers to infiltrate the T-Mobile database and steal this information, which the hackers then used to order new T-Mobile SIM cards on plaintiffs' service account in August 2015.  *Id.* ¶ 14.  According to plaintiffs, the hackers received the T-Mobile SIM cards and gained access to plaintiffs' cellular phones on August 26, 2015.  *Id.* ¶ 17.  Plaintiffs allege the hackers used the SIM cards to take over plaintiffs' social media accounts, including their profitable Instagram page, which was linked to their phone via plaintiffs' email accounts.  *Id.*  Plaintiffs further allege this hack has caused them to lose approximately $12,000 a month in business income.  *See* Ghassan Decl. ¶ 7, ECF No. 16.

Based on these allegations, plaintiffs filed this lawsuit in San Joaquin County Superior Court on August 24, 2017, making the following claims against T-Mobile and Experian under federal and state law: (1) negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1680 *et seq.*; (2) negligence; (3) breach of implied contract; (4) breach of fiduciary duty; (5) negligent misrepresentation; and (6) negligent interference with prospective economic relations.  *See generally* Compl.

Experian removed the case to federal court asserting federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367(a), on the basis that plaintiffs' FCRA claim arises under federal law.  Notice of Removal ¶¶ 6–7, ECF No. 1.

On April 17, 2018, T-Mobile filed the instant motion to compel arbitration and stay the action, arguing plaintiffs are bound by the arbitration agreement contained in the T-Mobile Terms & Conditions.  ECF No. 9.  Experian joined the motion, requesting that plaintiffs' claims against Experian be ordered to arbitration alongside those against T-Mobile because Experian was a T-Mobile "Service" provider, is closely related to the contractual relationship between T-Mobile and plaintiffs, and is an express third-party beneficiary of the agreement between plaintiffs and T-Mobile.  Joinder Mot., ECF No. 13 at 2.  Experian also reserved the right to seek severance and transfer of plaintiffs' claims to the Central District of California for consolidation with the class action *In re Experian Data Breach Litigation*, No. 8:15-cv-01592.  Joinder Mot. at 2.  Plaintiffs filed their opposition on May 31, 2018, ECF No. 14, and T-Mobile replied on June 8, 2018, ECF No. 17.  The court submitted the matter without oral argument.

B. <u>Plaintiffs' T-Mobile Service</u>

According to T-Mobile's records, plaintiff Ghassan Mohammad ("Ghassan") opened a T-Mobile account and activated two lines of service on June 27, 2014, adding plaintiff Sadiq Mohammad ("Sadiq") as an authorized user. Muzio Decl. ¶¶ 2–3, ECF No. 10. The March 2014 Terms & Conditions in effect when Ghassan opened this account and activated cellular service provided that by activating their service plaintiffs accepted T-Mobile's Terms & Conditions, and plaintiffs do not dispute that they accepted the conditions. *See* Muzio Decl. ¶ 4; Muzio Decl. Ex. A, 2014 Terms & Conditions ("2014 T&C"), ECF No. 10-1 at 2, ¶ 1. The March 2014 Terms & Conditions state that they apply "**to each line of Service.**" 2014 T&C at 1 (emphasis in original). As noted in T-Mobile's service contract, the Terms & Conditions were, and remain, available online at www.T-Mobile.com or by calling T-Mobile's toll-free Customer Care number. *See, e.g.*, Muzio Decl. Ex. D, ECF No. 10-4 at 1.

The March 2014 Terms & Conditions contained an arbitration agreement providing in bold and capitalized font:

> **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

2014 T&C at 2, ¶ 2 (emphasis in original). These Terms & Conditions also notified customers they may opt out of the arbitration agreement:

> **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE** . . . . You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at www.T-Mobiledisputeresolution.com. **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

*Id.* at 2–3, ¶ 2 (emphasis in original). Plaintiffs, however, did not opt out of the arbitration agreement. Muzio Decl. ¶ 8.

3

On August 20, 2015, shortly before the events giving rise to this lawsuit, Ghassan made a payment on plaintiffs' T-Mobile account and electronically signed a two-page receipt acknowledging that "[a]ctivation or use of T-Mobile service is your agreement to T-Mobile's Terms and Conditions." Muzio Decl. Ex. B, ECF No. 10-2 at 1. Ghassan's signature appears on the second page of this receipt and the language discussing the Terms & Conditions appears on the first page. The receipt also states: "T-Mobile requires ARBITRATION of Disputes UNLESS, for new customers, YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers, you previously opted out pursuant to T-Mobile's Terms and Conditions" and refers customers to T-Mobile's Terms & Conditions. *Id.* The June 2015 Terms & Conditions in effect when Ghassan made the payment provided for plaintiffs' acceptance "by doing any of the following: (a) giving us a written or electronic signature . . .; (b) activating service; (c) using the Service[;] (d) using your service after you make a change or addition; (e) paying for the Service or a "T-Mobile Device." Muzio Decl. Ex. C, 2015 Terms & Conditions ("2015 T&C"), ECF No. 10-3 at 2, ¶ 1. The June 2015 Terms & Conditions included an arbitration agreement worded identically to the one in place when plaintiffs activated their lines of service in June 2014. *See* 2014 T&C at 2, ¶ 2; 2015 T&C at 2, ¶ 2.

Since August 2015, plaintiffs have activated new lines of T-Mobile service three times: on July 8, 2016, December 5, 2016, and March 15, 2017. Muzio Decl. ¶¶ 17–18; Muzio Decl. Exs. D, F, G, ECF Nos. 10-4, 10-6, 10-7. Each time plaintiffs added a new line of service to their account, Ghassan electronically signed Service Agreements providing, in bold font above the signature line, that by "activating or using T-Mobile service," plaintiffs were agreeing to T-Mobile's Terms & Conditions, including T-Mobile's arbitration provision. Muzio Decl. Exs. D, F, G at 1. The March 2016 Terms & Conditions in effect on July 8, 2016, contain an arbitration agreement substantively identical to the one quoted above. *See* Muzio Decl. Ex. E, 2016 Terms & Conditions ("2016 T&C"), ECF No. 10-5 at 7 (changing sentence "[y]ou may opt out of these arbitration procedures by calling 1-866-323-4405 or completing the opt-out form located at www.T-Mobiledisputeresolution.com" to "[y]ou may opt out of these arbitration procedures by calling 1-866-323-4405 or online at www.T-Mobiledisputeresolution.com").

## II. LEGAL STANDARD

Congress enacted the Federal Arbitration Act ("FAA") "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA provides that "arbitration agreements generally shall be valid, irrevocable, and enforceable." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (internal quotation marks and citations omitted). Section 2 of the FAA, its "primary substantive provision," *Concepcion*, 563 U.S. at 339 (citation omitted), states: "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Section 4 of the FAA allows district courts to hear motions to compel arbitration. 9 U.S.C. § 4. Generally, in deciding whether to compel arbitration, a court determines two "gateway" issues: (1) whether an agreement to arbitrate between the parties exists; and (2) whether their agreement covers the dispute brought before the court. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The party moving to compel arbitration bears the burden on each of these elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

The party opposing arbitration may argue the agreement is unenforceable based on any "'generally applicable contract defenses, such as fraud, duress, or unconscionability,'" but not "defenses that apply only to arbitration." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). After all, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Knutson*, 771 F.3d at 565 (internal quotation marks and citation omitted). A court may therefore declare an arbitration agreement unenforceable when enforcement would contravene a state's law, but only if that state law is not preempted by the FAA. *See Concepcion*, 563 U.S. at 343. Stated simply, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 341.

5

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard" of Federal Rule of Civil Procedure 56. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks and citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration . . . ."); *Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing an order compelling arbitration when opposing party had been afforded no opportunity to present evidence and argument). The party opposing arbitration receives the benefit of any reasonable doubts, and the court draws reasonable inferences in that party's favor; only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)); *Concat*, 350 F. Supp. 2d at 804.

Nevertheless, the decision to compel arbitration is mandatory, not discretionary, if the requirements are met. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Federal law strongly favors enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

III.  DISCUSSION

Defendant T-Mobile moves to compel arbitration on the basis that the arbitration clause in the Terms & Conditions mandates this action be arbitrated. Mot. at 1. Plaintiffs argue the arbitration provision at issue is unconscionable and therefore unenforceable. Opp'n at 4–6. As explained below, the court finds the arbitration agreement is valid and enforceable and covers plaintiffs' claims.

A.  Valid Agreement: Unconscionability

To determine whether a valid, enforceable arbitration agreement exists between the parties, the court must look to state law. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Here, the parties agree that California law governs the validity of the arbitration

agreement. *See* Mot. at 7; Opp'n at 4. Under California law, courts may refuse to enforce an unconscionable arbitration agreement. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1328–29 (1999). The party seeking to establish an unconscionability defense must do so by a preponderance of the evidence. *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1468 (2013); *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 172–73 (2015). A contract to arbitrate is unconscionable and unenforceable only when it is both procedurally and substantively unconscionable, though both types of unconscionability need not be present to the same degree. *Ingle*, 328 F.3d at 1170 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required" to find the agreement unenforceable, and vice versa. *Armendariz*, 24 Cal. 4th at 114.

1. Procedural Unconscionability

Under California law, procedural unconscionability arises from "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). The Ninth Circuit, applying California law, has explained that "[a] contract is procedurally unconscionable if it is a contract of adhesion, i.e., a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at 115). Procedural unconscionability focuses on two factors in the contracting process: oppression and surprise. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Chavarria v. Ralph's Grocery Co.*, 733 F.3d 916, 922 (2013) (quoting *A M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1571 (2009)); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) (surprise occurs

when the allegedly unconscionable provision is "hidden in a prolix printed form") (quoting *Flores*, 93 Cal. App. 4th at 853). In California, when the degree of procedural unconscionability of an adhesion agreement is low, it will be enforceable unless the degree of substantive unconscionability is high. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1263 (9th Cir. 2017) (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)).

Plaintiffs first contend "they could not have reasonably anticipated they would be involved in a claim" against defendant exceeding $75,000 that would bring them within the American Arbitration Association ("AAA") Commercial Rules under the arbitration provisions set forth in their Service Agreements, thus requiring them to pay substantial arbitration fees. Opp'n at 5. Therefore, they assert, the arbitration agreement is procedurally unconscionable as an adhesion contract. *Id.* Defendant responds that every version of the arbitration agreement clearly gave plaintiffs the opportunity to opt out of arbitration, which they failed to take advantage of, and that this option eliminates the possibility of procedural unconscionability. Reply at 2–3.

There is no contract of adhesion if the contract provides a meaningful opportunity to opt out of arbitration. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability when plaintiff was given thirty days to decide whether to participate in the arbitration program and mail a simple form to opt out, and the arbitration agreement did not contain any other indicia of procedural unconscionability); *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008) (per curiam) ("[P]roviding a meaningful opportunity to opt out can preclude a finding of procedural unconscionability and render an arbitration provision enforceable." (internal quotation marks omitted)).

Here, the arbitration agreement did not present plaintiffs with only the opportunity to accept the arbitration agreement or reject T-Mobile's phone service. Instead, the agreement contained an opt-out provision giving plaintiffs thirty days to opt out of the arbitration agreement by either telephone or Internet. *See* 2014 T&C at 3, ¶ 2; 2015 T&C at 2, ¶ 2; 2016 T&C at 7. If they had chosen to opt out, plaintiffs would not have suffered any adverse consequences, as they could have continued their T-Mobile service with the same benefits and for the same price.
/////

8

Additionally, regarding the legal consequences of failing to opt out, the agreement warned:

> THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

2014 T&C at 2, ¶ 2; 2015 T&C at 2, ¶ 2; 2016 T&C at 7.

Moreover, neither the arbitration agreement nor the opt-out provision were hidden terms. As noted above, the Terms & Conditions containing the arbitration agreement were available online at www.T-Mobile.com or by calling T–Mobile's toll-free Customer Care number. *See, e.g.*, Muzio Decl. Ex. D, ECF No. 10-4 at 1. Further, the arbitration agreement itself is written in capitalized and bolded letters in the 2014, 2015, and 2016 Terms & Conditions, under a paragraph labeled "Dispute Resolution and Arbitration." 2014 T&C at 2, ¶ 2; 2015 T&C at 2, ¶ 2; 2016 T&C at 7. The op-out provision immediately follows the arbitration agreement in the Terms & Conditions and is also written in capitalized and bolded letters. *See* 2014 T&C at 2–3; 2015 T&C at 2; 2016 T&C at 7. T-Mobile thus clearly advised plaintiffs of both the legal consequences of failing to opt out and the mechanisms by which they could do so.

Second, plaintiffs argue the arbitration agreement is procedurally unconscionable because defendant did not attach a copy of the AAA rules or the commercial arbitration fee schedule to the agreement. Opp'n at 6. Defendant responds that incorporation of the AAA rules by reference does not render the arbitration agreement procedurally unconscionable, so long as the rules are clearly identified and accessible. Reply at 3–4. The court agrees with defendant, in light of the applicable law.

The Ninth Circuit is clear that "incorporation [of the AAA rules] by reference, without more, does not affect the finding of procedural unconscionability." *Poublon*, 846 F.3d at 1262. While courts may "more closely scrutinize the substantive unconscionability" of terms that appear only in AAA rules, including them in an agreement only by reference does not automatically equate to procedural unconscionability. *Id.* (quoting *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016)). Under California law, parties to an agreement can incorporate by reference into their contract the terms of another document. *Collins v. Diamond Pet Food*

9

*Processors of California, LLC*, No. 2:13-cv-00113-MCE-KJN, 2013 WL 1791926, at *5 (E.D. Cal. 2013). However, "the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997) (internal quotation marks and citations omitted).

Here, the arbitration agreement in the 2014 and 2015 Terms & Conditions provides "[f]or claims less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply; for claims over $75,000, the AAA's Commercial Arbitration Rules will apply." 2014 T&C at 3; 2015 T&C at 3. In contrast, the arbitration agreement in the 2016 Terms & Conditions provides that "arbitration of all disputes will be administered . . . under [the AAA] Consumer Arbitration Rules." 2016 T&C at 7. The AAA rules were readily accessible to plaintiffs at the hyperlink or telephone number listed in the Terms & Conditions. *See* 2014 T&C at 3; 2015 T&C at 3; 2016 T&C at 7. ("The AAA rules are available at www.adr.org or by calling 1-800-778-7879."). Based on the agreement's clear and unambiguous incorporation of the arbitration rules and the accessibility of those rules to plaintiffs, the court concludes that incorporation of the AAA rules by reference into the otherwise valid arbitration agreements, rather than by physical attachment, does not render the agreements procedurally unconscionable. *See e.g.*, *Collins*, 2013 WL 1791926, at *5 (failure to attach copy of AAA rules did not render arbitration agreement procedurally unconscionable when rules were referenced in agreement and were easily accessible to plaintiff on Internet); *Ulbrich v. Overstock.Com, Inc.*, 887 F.Supp.2d 924, 932–33 (N.D.Cal.2012) ("[M]atters like the AAA rules can be incorporated into a contract by reference provided the incorporation is clear and the incorporated rules are readily available.").

Because the arbitration agreements contain an opt-out provision and the AAA rules are properly incorporated under California law, the agreements are not procedurally unconscionable. *See Meyer v. T-Mobile USA, Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (finding no procedural unconscionability for T-Mobile arbitration agreement that resembles the one at issue in this case); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, at *3–6 (N.D. Cal. Apr. 11, 2011) (same).

2.      Substantive Unconscionability

The analysis for substantive unconscionability focuses on the one-sidedness of the contract terms. *See Armendariz*, 24 Cal. 4th at 114. "'Not all one-sided contract provisions are unconscionable.'" *Poublon*, 846 F.3d at 1261 (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)). An arbitration agreement must be "overly harsh," "unduly oppressive," "unreasonably favorable," or must "shock the conscience" to be substantively unconscionable. *Id.* (quoting *Sanchez*, 61 Cal. 4th at 911). Courts are largely concerned with terms that are "unreasonably favorable to the more powerful party." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013)).

Plaintiffs contend the arbitration agreement is substantively unconscionable because it imposes excessive costs on plaintiffs in light of their $1 million claim. Opp'n at 6. Specifically, plaintiffs argue the agreement's fee provision requiring a party bringing a claim exceeding $75,000 to pay at least $14,700 in fees under the AAA Commercial Rules, while defendant pays nothing, renders the agreement invalid. Opp'n at 5–6. Defendant responds that plaintiffs' argument is moot because defendant has committed to arbitrate under the AAA Consumer Rules, sparing plaintiffs the significant fees charged only in connection with commercial arbitration with the AAA. Reply at 6–7. Defendant also argues the arbitration agreement is not substantively unconscionable simply because plaintiffs must pay administrative fees. Reply at 7–8.

The arbitration agreement at issue here is not substantively unconscionable for two reasons. First, plaintiffs agreed in 2016 and 2017 to arbitration clauses that provide for arbitration under the AAA Consumer Rules, not the Commercial Rules. 2016 T&C at 7; Muzio Decl. ¶¶ 13-19. The terms of the March 2016 Terms & Conditions provide that they comprised "the entire agreement between you and us regarding the rights you have with respect to your Service." 2016 T&C at 15. The arbitration clause of the March 2016 Terms & Conditions covers "ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS."

2016 T&C at 7.  Those Terms & Conditions further provide that arbitration will be conducted "under [the AAA] Consumer Arbitration Rules in effect at the time the arbitration is commenced."  2016 T&C at 7.  Under Ninth Circuit law, this language is sufficiently broad to apply retroactively to pre-existing claims.  *See Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (finding arbitration clause applied to dispute arising from events pre-dating clause when the agreement contained an integration clause and the arbitration provision was broad, "applying to *any* dispute between the parties," and "not limited to prospective disputes" (emphasis in original)), *aff'd*, 669 F. App'x 487 (9th Cir. 2016) (mem.).

Second, the arbitration agreement is not substantively unconscionable because defendant agreed on April 5, 2018, twelve days before filing the instant motion, to arbitrate under the AAA Consumer Rules, thus ensuring plaintiffs will not bear the costs that concern them. Gorton Decl. Ex. 4 at 2, ECF No. 11-4.  Defendant's offer to proceed under the Consumer Rules before it moved to compel arbitration moots the prohibitive arbitration costs argument raised by plaintiffs.  *See Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016) (declining to address question of whether fee provision requiring plaintiffs to split arbitration costs equally with defendant precluded plaintiffs from effectively vindicating their federal statutory rights when defendant agreed to pay full costs of arbitration).  Therefore, the agreement is not unconscionable and is enforceable.  Plaintiffs' claims are subject to arbitration unless their dispute falls outside the terms of the arbitration agreement.

B.  Plaintiffs' Claims Are Covered by the Arbitration Agreement

The court finds the arbitration agreement covers plaintiffs' claims.  Indeed, plaintiffs do not contest this issue.  *See generally* Opp'n.

/////

/////

/////

/////

/////

/////

The arbitration agreement contained in T-Mobile's Terms & Conditions states in relevant part:

> **WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW . . . ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

*See* 2014 T&C at 2, ¶ 2 (emphasis in original); 2015 T&C at 2, ¶ 2; 2016 T&C at 7.

All of plaintiffs' claims arise from defendant T-Mobile's alleged misconduct in failing to safeguard plaintiffs' personal identifying information. These claims are thus disputes concerning T-Mobile's service covered by the arbitration agreement.

### C. Joinder of Claims Against Experian

The court next resolves defendant Experian's joinder in T-Mobile's motion to compel arbitration. In support of its joinder motion, Experian argues that as "a third-party vendor providing services related to customers of T-Mobile and on T-Mobile's behalf, Experian is a third-party beneficiary of each and every contract entered into by Plaintiffs and T-Mobile." Joinder Mot. at 2. Plaintiffs do not oppose Experian's joinder in T-Mobile's motion.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)). California law generally provides that "one must be a party to an arbitration agreement to be bound by it or invoke it." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, *Inc.*, 129 Cal. App. 4th 759, 763 (2005). Under an exception to this general rule, however, "nonsignatories can enforce arbitration agreements as third party beneficiaries." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *see also Bouton v. USSA Cas. Ins. Co.*, 167 Cal. App. 4th 412, 424 (2008) (nonsignatories may enforce arbitration agreements when they are "agents or alter egos of a signatory party or intended third party beneficiaries"). "A third party qualifies as a beneficiary under a contract if the parties intended to

benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985)

Here, the plain meaning of the arbitration agreement in T-Mobile's Terms & Conditions evidences the parties' intent to include claims against third-party vendors within the scope of the arbitration agreement. The arbitration provision "includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, Dealers or *third party vendors*) whenever you also assert claims against [T-Mobile] in the same proceeding." 2014 T&C at 2 (emphasis added), ¶ 2; 2015 T&C at 2, ¶ 2 (same); 2016 T&C at 7 (same and adding "authorized retailers" to the list of other parties). Plaintiffs bring the same claims against T-Mobile and Experian relating to "Services" provided to plaintiffs. Further, T-Mobile paid Experian to store and maintain the personal identifying information of T-Mobile customers, including plaintiffs, for credit assessments. *See* Ghassan Decl. Ex. 1 at 1, ECF No. 16-1 (letter to Ghassan Mohammad describing data breach and noting that Experian houses personal information provided by T-Mobile customers on T-Mobile's behalf to perform credit checks). Experian is thus a third-party vendor providing services related to T-Mobile customers on T-Mobile's behalf and qualifies as an intended third-party beneficiary of the arbitration agreement between T-Mobile and plaintiffs.

Accordingly, Experian's unopposed joinder in T-Mobile's motion to compel arbitration is proper and plaintiffs' claims against Experian also are subject to arbitration.

IV. CONCLUSION

For the foregoing reasons, the court GRANTS defendant T-Mobile's motion to compel arbitration and GRANTS defendant Experian's joinder in T-Mobile's motion and compels arbitration as to the claims against Experian as well. The court STAYS all further proceedings pending completion of arbitration. The parties shall notify the court within fourteen (14) days of completion.

IT IS SO ORDERED.

DATED: November 28, 2018.

_____
UNITED STATES DISTRICT JUDGE

14